**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| MAERSK OIL TRADING AND INVESTMENTS A/S, | § | Civil Action Number |
| Plaintiff, | § | 2:26-cv-04462 |
| V. | § | In Admiralty Rule 9(h) |
| VALLOEBY PROSPERA LTD.; and MT VS PROSPERA (IMO 9298313), her Engines, tackle, equipment, and Appurtenances, *in rem*, | § | JUDGE |
| | § | MAGISTRATE JUDGE |
| Defendants. | § | |

* * * * * * * * * * * * * * * * * * * * * * * *

## VERIFIED COMPLAINT IN INTERVENTION

The plaintiff, Maersk Tankers (Panamax), LLC (*ex rel.* Penfield Tankers (Panamax), LLC) ("MT") submits this Verified Complaint in Intervention against the *in personam* defendant, Valloeby Prospera Ltd. (*ex rel.* Valloeby Athens Star Ltd.) (the "Owners"), and the *in rem* defendant, the M/T VS PROSPERA (IMO No. 9298313), her engines, apparel, furniture, equipment, appurtenances, tackle, etc., (the "Vessel"), and asserts the following:

## JURISDICTION AND VENUE

1. This is an action within this Court's jurisdiction pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction), Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B"), Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule C"), and Federal Rule of Civil Procedure 9(h). MT elects to bring this action pursuant to 28 U.S.C. §1333 (admiralty and maritime jurisdiction) and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Jurisdiction and venue are proper in this Court because, upon information and belief, on Saturday, October 24, 2026, the *in rem* defendant, the Vessel, will arrive at the port of Lake Charles, Louisiana, which is within this District.

## PARTIES

3. MT is a U.S. entity organized and existing under the laws of the state of Delaware, engaged in the business of providing maritime operation and logistics services to oceangoing vessels in connection with the international carriage of goods.

4. Upon information and belief, the Owners, the *in personam* defendant, is a foreign entity organized and existing under the laws of the Isle of Man.

5. The Vessel, the *in rem* defendant, is a crude oil tanker bearing IMO No. 9298313. Upon information and belief, she is approximately 229 meters in length, and her beam is approximately 32.3 meters wide. The Vessel bears a Maritime Mobile Service Identity No. of 232006316, and she flies the flag of the United Kingdom of Great Britain.

## FACTUAL BACKGROUND

6. This matter arises out of damages allegedly sustained in connection with damage to a cargo of approximately 51,485.585 metric tons of Very Low Sulfur Fuel Oil (the "Cargo") that was owned at all relevant times by MOT and carried aboard the Vessel from Antwerp, Belgium, to Balboa, Panama.

### A. Chartering Chain

7. At all relevant times, the Vessel was subject to a Pool Participation Agreement entered into between Owners and MT on May 18, 2017 (the "Pool Agreement").

8. The Pool Agreement called for MT to commercially operate certain vessels, including the Vessel, as time charterer under a "SHELLTIME 4" form.

9. The Pool Agreement is governed by English law and provides for any disputes to be decided by arbitration in London subject to the London Maritime Arbitrators Association ("LMAA") Terms.

i. Time Charter of the Vessel from Owners to MT

10. MT is the time charterer of the *in rem* defendant, the Vessel, under a time charter party dated May 19, 2017, entered into with the Vessel's Owners (the "Time Charter") via its agent, Maersk Tankers, LLC.

11. In accordance with the Pool Agreement, the terms of the Time Charter are set forth in a "SHELLTIME 4" form.

12. The Time Charter is governed by English law and provides for arbitration in London under the LMAA Terms.

13. The Time Charter provides in pertinent part as follows:

> Description and Condition of Vessel
>
> 1. At the date of delivery of the vessel under this charter***, and throughout the entire period of this Charter party***
> (a) she shall be classed: ***in a classification society which is a full member of IACS:***
> (b) she shall be in every way fit carry crude petroleum and/or its products;
> (c) she shall be tight, staunch, strong, in good order and condition, and in every way fit for the service, with her machinery, boilers, hull and other equipment (including but not limited to hull stress calculator and radar) in a good and efficient state;
> (d) her tanks, valves, and pipelines shall be oil-tight;
>
> [***]
>
> Duty to Maintain
>
> 3. (i) Throughout the charter service Owners shall, whenever the passage of time, wear and tear or any event (whether or not coming within Clause 27 hereof) requires steps to be taken to

maintain or restore the conditions stipulated in Clauses 1 and 2(a), exercise due diligence so to maintain or restore the vessel.

ii. Sub-Charter of the Vessel from MT to Maersk Tankers A/S, then to MOT

14. MT subsequently entered into a sub-charter party of the Vessel with Maersk Tankers A/S, and Maersk Tankers A/S then entered into another sub-charter party of the Vessel with MOT. These two sub-charter parties contained mirrored terms.

15. The voyage charter party entered into between Maersk Tankers A/S and MOT is dated November 12, 2025 (the "MOT Voyage Sub-Charter"), and incorporated the terms of a "SHELLVOY 6" form.

16. Similar to the Time Charter, it is governed by English law and refers all disputes to arbitration in London in accordance with the Arbitration Act 1996.

**B. Carriage of the Cargo from Antwerp, Belgium, to Balboa, Panama**

17. The Cargo was carried aboard the Vessel under the MOT Voyage Sub-Charter.

18. At all relevant times, the Cargo was owned by MOT.

19. On or about November 17, 2025, the Vessel commenced her laden voyage from Antwerp, Belgium, to Balboa, Panama.

20. On or about December 1-2, 2025, the Vessel's main engine suffered a breakdown.

21. By December 5, 2025, it became apparent that the Vessel was incapable of resuming its laden voyage.

22. On December 7, 2025, the Vessel was towed to Curaçao, where it remained for over six months until departing on or about May 13, 2026.

23. The Vessel arrived at the discharge port in Balboa, Panama, on or about May 25, 2026, and discharge was completed on or about July 11, 2026.

**C. MOT's Allegations of the Vessel's Unseaworthiness**

24. An initial survey of the Vessel was conducted at Curaçao on December 10, 2025, and it indicated significant damage to the Vessel's main engine.

25. An initial joint inspection of the Vessel's main engine was conducted on January 29, 2026, and an additional joint inspection was completed on June 17, 2026.

26. MOT contends that the findings of the joint inspections indicate that the Owners failed to exercise due diligence to provide a seaworthy Vessel and maintain the Vessel and her machinery, equipment, and appurtenances in good order and condition.

27. MOT alleges that the Cargo was loaded with a sufficiently low sulfur content (0.49%) to be marketable as Very Low Sulfur Fuel Oil ("VLSFO"), but by the time it was discharged over seven months later, its sulfur content had increased and exceeded the threshold of 0.5% sulfur content.

28. This increase allegedly precluded MOT from marketing the Cargo as VLSFO. MOT contends that but for the Owners' failure to provide a seaworthy vessel fit for carrying the intended Cargo, this loss would not have occurred.

29. Consequently, MOT seeks damages flowing from this alleged loss from its contractual counterparty under the MOT Voyage Sub-Charter, Maersk Tankers A/S, who has likewise asserted a contractual indemnity claim for these alleged damages to MT under the mirrored terms of its charter party with MT.

**D. MOT's Alleged Damages**

30. MOT claims to have sustained damages that include, but are not limited to, the below specific elements:

a. $7,495,128.00 in hedging losses arising from transactions entered into by MOT to hedge its position with respect to the Cargo;

b. $1,588,117.44 in costs incurred for cutting and blending the Cargo, which was allegedly completed by MOT to bring the Cargo to a marketable condition after discharge;

c. $834,700.00 in tank fees incurred to store the Cargo and arrange blending.

31. Consequently, MOT has presented a claim in the amount of $9,917,945.44 to its contractual counterparty under the MOT Voyage Sub-Charter, Maersk Tankers A/S.

32. Maersk Tankers A/S has likewise asserted a breach of contract and/or contractual indemnity claim for the damages arising from the alleged Cargo loss under the mirrored terms of its charter party with MT.

**E. Pending Arrest of the Vessel**

33. MOT has moved this Court for the issuance of a warrant for the arrest of the Vessel.

34. MOT has also moved this Court for permission to effectuate service of such a warrant on the Vessel via the engagement of a duly authorized agent of this Court.

35. Upon information and belief, the Vessel will call Lake Charles, Louisiana, on Saturday, October 24, 2026.

36. After the Vessel has been arrested in Lake Charles, Louisiana, upon information and belief, the Vessel will be sold at auction to satisfy a judgment of this Court and all existing liens will be satisfied out of the proceeds of the judgment.

**COUNT I – BREACH OF MARITIME CONTRACT AGAINST OWNERS**

37. MT incorporates and reasserts the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38. MT brings this claim *in personam* against Owners as more fully set out above, because Owners entered into and breached the Time Charter with MT.

39. MT performed all of its obligations under the Time Charter as set forth above.

40. Owners, on the other hand, failed to comply with the terms of the Time Charter by failing to provide a seaworthy vessel fit for her intended purpose—the transoceanic carriage of the Cargo.

41. Accordingly, Owners are in breach of the Time Charter and are indebted to MT in an amount to be proven at trial, but not less than $13,500,000.00, in addition to MT's attorneys' fees and costs incurred in the prosecution of this lawsuit and the arbitral proceeding to be initiated by MT in London against the Owners under the Time Charter.

**COUNT II – SECURITY UNDER ENGLISH LAW**

42. MT incorporates and reasserts the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43. Under the Time Charter, which is governed by English law, MT is entitled to security in an amount no less than approximately $13,500,000.00, which includes, but is not limited to, the following components:

a. $9,917,945.44 in MOT's alleged damages flowing from the Cargo loss;

b. $2,300,000.00 for approximately three years of interest that will accrue during the prosecution of the arbitral proceeding to be initiated by MT in London against Owners under the terms of the Time Charter; and

c. $1,200,000.00 in attorneys' fees and costs to be incurred by MT in connection with the prosecution of the arbitral proceeding to be initiated by MT in London against Owners under the terms of the Time Charter.

44. MT is therefore entitled to not less than $13,500,000.00 in security from Owners for damages flowing from Owners' breach of the Time Charter and/or contractual indemnity owed to MT under the Time Charter, including the amount of MOT's alleged claim, interest that will accrue during the pendency of the arbitral proceeding that MT will initiate in London against Owners under the Time Charter, and attorneys' fees and costs that will be incurred by MT in connection with that arbitral proceeding.

**COUNT III – MARITIME ARREST OF VESSEL UNDER RULE C**

45. MT incorporates and reasserts the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. MT has fully performed its obligations with respect to the Time Charter, but Owners failed to tender a seaworthy vessel fit for the intended purpose of carrying the Cargo from Antwerp, Belgium, to Balboa, Panama, as required under the Time Charter.

47. Consequently, the Owners of the Vessel are in breach of the Time Charter for failing to provide a vessel fit for its intended use. As a result, MT possesses a maritime claim that gives rise to a maritime lien on the Vessel *in rem*. *See Rainbow Line, Inc. v. M/V TEQUILA*, 341 F.Supp. 459 (S.D.N.Y. 1972); *Bank One, Louisiana N.A. v. MR. DEAN MV*, 293 F.3d 830, 834 (5th Cir. 2002).

48. This maritime lien has arisen in favor of MT against the Vessel and her engines, boilers, tackle, equipment, apparel, appurtenances, as more fully set out above, because the Owners breached the Time Charter and caused MT to sustain damages.

49. Accordingly, MT seeks to enforce its maritime lien under Rule C.

50. MT maintains a maritime lien on the Vessel and is entitled to arrest the Vessel when it is located within this District pursuant to Rule C.

51. MT is not seeing this arrest for the purpose of injuring or harassing the Vessel or her Owners.

52. MT will be prejudiced in its recovery against Owners absent the issuance of an order of arrest of the Vessel.

53. Consequently, MT seeks an order from this Court directing the Clerk of Court to issue a Warrant of Maritime Arrest under Rule C and that the Vessel be seized by the U.S. Marshal to be held as security against any judgment to be entered herein against the Vessel.

54. Finally, MT avers that exigent circumstances exist that make this Court's review impracticable, and this Court should therefore direct the Clerk to immediately issue a warrant for maritime arrest of the Vessel.

**COUNT IV – MARITIME ATTACHMENT OF VESSEL UNDER RULE B**

55. MT incorporates and reasserts the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56. Owners cannot be found in the District. After diligent search, and as is set forth in the accompanying Declaration of Andrew V. Waters, Owners cannot be found within the District for purposes of Supplemental Rule B.

57. Diligent searches of the website maintained by the Louisiana Secretary of State, an internet Whitepages directory, and the publicly available internet via Google did not identify Owners as:

a. ever being registered or authorized to transact business in the state of Louisiana;

b. having appointed an agent for service of process in this District; or

c. having any other presence in this District.

58. Further, MT is unaware of Valloeby having any general or managing agents in this District.

59. Accordingly, Valloeby cannot be found within this District within the meaning of Supplemental Rule B.

60. The property of Owners will soon be located in this District.

61. Upon information and belief, the Vessel is expected to arrive in the Port of Lake Charles, Louisiana, on or about October 24, 2026.

62. Accordingly, MT respectfully seeks to attach the Vessel pursuant to Rule B as property located in this District belonging to Owners.

63. As set forth in greater detail above, Owners breached its maritime contractual obligations to MT.

64. The breach caused MT to suffer estimated damages of not less than $13,500,000, plus interest, costs, and attorneys' fees (which are recoverable under English law).

65. MT brings this action to obtain *quasi in rem* jurisdiction over Owners, and *in rem* jurisdiction over the Vessel, and security for the enforcement of any resulting awards and/or judgments which it may obtain against Owners.

66. Owners cannot be found within this District for the purposes of Supplemental Rule B, but the property of Owners, namely the Vessel, may, or soon will be found within this District.

67. MT is accordingly entitled to attach the property, namely the Vessel, pursuant Supplemental Rule B and arrest the Vessel pursuant to Supplemental Rule C.

68. MT seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching any and all assets of Owners up to the amount of $13,500,000.00, for the purpose of obtaining personal jurisdiction over Valloeby and to secure MT's claims, as described above.

69. Further, MT seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Arrest pursuant to Supplemental Rule C, arresting the Vessel to secure MT's claims, as described above.

70. Finally, MT expressly reserves all its rights to have the underlying merits of all claims resolved in arbitration in London.

**WHEREFORE**, Maersk Tankers (Panamax), LLC (*ex rel.* Penfield Tankers (Panamax), LLC) ("MT") respectfully requests that this Court enter judgment in its favor and against the *in personam* defendant, Valloeby Prospera Ltd. (*ex rel.* Valloeby Athens Star Ltd.) (the "Owners"), and the *in rem* defendant, the M/T VS PROSPERA, and prays as follows:

a. that process of arrest, in due form of law, according to the course and practice of this Court in causes of Admiralty and Maritime Jurisdiction within the meaning of the Constitution of the United States and Rule 9(h) of the Federal Rules of Civil Procedure, may issue against the Vessel, the M/V VS PROSPERA, her engines, boilers, tackle, equipment, apparel, and all other necessaries and equipment belonging and appurtenant thereto, as provided in Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, and that all persons claiming any interest in the Vessel may be cited to appear and answer the matters aforesaid, and that the Vessel, her engines, boilers, tackle, equipment, apparel, and all other necessaries belonging and appurtenant thereto, may be seized, condemned, and sold to pay the demands and claims of the Owners, with interest, costs, and attorneys' fees, and to pay other amounts required to be paid by the Owners to MT under the Time Charter, together with interest, costs, and attorneys' fees;

b. that because Owners cannot be found within this District pursuant to Supplemental Rule B, the Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching all property, tangible or intangible, in whatever form, in the amount of not less than $13,500,000.00;

c. that process according to the practice of this Court be issued against all parties;

d. that Plaintiff-Intervenor have a judgment against the Owners *in personam* for damages to be proven at trial but not less than the economic damages as identified above in paragraph 43(a)-(c) owed by the defendant, the Owners, plus pre- and post-judgment interest, contractual fees, attorneys' fees, and costs thereon as allowed by contract and by law;

e. that the Court hold that Plaintiff-Intervenor holds a valid maritime lien against the *in rem* defendant Vessel, the M/V VS PROSPERA, and its engines, appurtenances, furnishings, machinery and equipment as provided by law;

f. that Plaintiff-Intervenor have judgment *in rem* against the defendant Vessel, the M/V VS PROSPERA, including, without limitation, all of her engines, boilers, tackle, equipment, apparel, and all other equipment and appurtenances appertaining or belonging to the Vessel, whether on board or not, for damages to be proven at trial but not less than the economic damages as identified above in paragraph 43(a)-(c) owed by the defendant Vessel, plus pre- and post-judgment interest, contractual fees, attorneys' fees, and costs thereon as allowed by contract and by law;

g. that Plaintiff-Intervenor have pre- and post-judgment interest and such other and further relief as may be just and proper;

h. that this Court maintain jurisdiction over this matter through the entry of judgment or award for any current claims or those which may arise in the future, including any appeals;

i. that the Owners, *in personam*, and the Vessel, *in rem*, be held liable to MT under the theories of breach of contract and/or contractual indemnity should MOT establish MT to be liable for any damages sustained by MOT;

j. that the Court hold that at the sale of the *in rem* defendant, the M/V VS PROSPERA, that the Plaintiff-Intervenor may credit bid without cash deposit the amount due and owing up to the full amount thereof;

k. that judgment be issued against the *in rem* defendant, the M/V VS PROSPERA and the *in personam* defendant, her Owners, jointly and severally, in the full amount due, plus interest, together with charges, costs, and attorneys' fees; and

l. that the Court grant such other legal and equitable relief as it deems just and proper.

Respectfully submitted,

*/s/ Andrew V. Waters*

JASON P. WAGUESPACK (#21123)
ANDREW V. WATERS (#37913)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street, Suite 4000
New Orleans, Louisiana 70139
Telephone: (504) 525-6802
Facsimile: (504) 525-2456
jwaguespack@gallowaylawfirm.com
awaters@gallowaylawfirm.com
Attorneys for the Intervenor, *Maersk Tankers (Panamax), LLC*